

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00857-CR

Charles D. **WILLIAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR5580B
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:         Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:   December 4, 2013

AFFIRMED

Charles Williams was charged, as a habitual offender, with aggravated assault with a deadly weapon. He pled not guilty, and was tried and convicted by a jury. He was then sentenced by the trial court to life imprisonment. In one issue on appeal, Williams argues that evidence of a prior extraneous unadjudicated offense (aggravated assault with a deadly weapon) was improperly admitted in violation of Texas Rule of Evidence 403. We affirm the trial court's judgment.

## BACKGROUND

The State's evidence at trial showed that the shooting, which occurred on April 28, 2011, was part of an on-going neighborhood gang-related dispute. The victim, Michael Whitley, who was a member of the East Terrace Gangsters at the time, testified that on the occasion in question, he was coming out of his apartment and saw a Jeep Cherokee drive by. According to Whitley, he saw Williams riding in the backseat of the Jeep Cherokee. Whitley then got into his car, and as he drove away, the Jeep Cherokee started chasing after his car. Whitley testified that he then saw Williams shooting at him from the Jeep Cherokee. At a gas station, Whitley got out of his car and started running. As he ran, he was shot in the ankle, leg, and back. As Whitley hid behind a building, he saw the Jeep Cherokee in which Williams was riding leave in a hurry. Whitley testified that he then asked someone at the gas station to take him back to his own neighborhood where he waited for EMS to arrive. According to Whitley, although police officers arrived and asked him questions, he did not initially tell them what happened because he wanted to "take care" of the situation himself. However, he eventually decided he did not want to go to prison for retaliating against Williams and hinted to an officer that Williams had shot him. Whitley testified that several days after the shooting, he gave a written statement about the events of April 28, 2011. At trial, Whitley also testified that Williams had been shot himself a few weeks before the night Whitley was shot.

The defense evidence focused on Williams's physical condition due to his gunshot wound, which had been inflicted a few weeks before the night Whitley was shot. The defense also focused on the fact that at the time of the shooting, Williams was at home recuperating from his wounds and attending a birthday party. Williams's sister, Jacqueline Williams, testified that the day of the shooting, April 28, 2011, was her birthday. According to Jacqueline, she spent all afternoon and evening with Williams at his house celebrating her birthday and helping with his wound care. She

testified that Williams had been shot on March 21, 2011, or March 22, 2011, and was released from the hospital on April 2, 2011. Because Jacqueline is a certified nurse assistant, she went to his house every day to help dress the wound in his back and to check on his colostomy bag. Jacqueline testified that Williams never left the house that day because he was in a lot of pain and was on bed rest.

Also testifying for the defense was Claudia Gutierrez. She testified Williams was shot on March 21, 2011, and after he was released from the hospital, she went to the house three times a day to change his dressing. According to Gutierrez, Williams also had a colostomy bag, which his wife would change for him. Gutierrez testified that she was at Williams's house on the day of shooting. He had difficulty moving around, and he never left the house.

To rebut the evidence presented by the defense, the State called Cassihde Mobley to testify about a shooting that occurred on April 24, 2011, four days before Whitley was shot. According to Mobley, she was babysitting for a friend at an apartment complex. When her friend walked her to her car at about 4:00 a.m., a burgundy Taurus drove by, and two of the three occupants of the car began shooting. Mobley identified Williams as the driver of the Taurus. Mobley testified she was shot in the ankle and the calf. Although the defense objected to Mobley's testimony, the trial court overruled the objection and allowed the evidence to be offered as proof of opportunity and identity pursuant to Rule 404(b). The trial court also included an instruction in the court's charge instructing the jury that the extraneous offense evidence could only be considered for the purpose of identity and to rebut a defensive theory.

## DISCUSSION

On appeal, Williams argues that the trial court erred by admitting the extraneous offense evidence over his Rule 403 objection. We review the trial court's decision to admit evidence under

an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). As long as the trial court's ruling is within the zone of reasonable disagreement, we will affirm. *Id.*

Rule of Evidence 401 provides that evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. TEX. R. EVID. 401. However, even relevant evidence may not be admissible for every purpose. *Moses*, 105 S.W.3d at 626. Extraneous offense evidence is normally not admissible because our justice system recognizes that a defendant should only be tried for the charged crime and not for his propensity to commit crimes. *Id.* However, Rule 404(b) allows evidence of extraneous offenses if the evidence has relevance apart from character conformity. *Id.*; *see* TEX. R. EVID. 404(b). Thus, evidence of other crimes, wrongs or acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b); *see Moses*, 105 S.W.3d at 626. Rebuttal of a defensive theory is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b). *Moses*, 105 S.W.3d at 626. But, even if the evidence is relevant under Rule 401 and the purpose for which it is being offered is permissible under Rule 404(b), the evidence may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.*; *see* TEX. R. EVID. 403. Thus, even though evidence may be admissible under Rule 404(b), the trial court may exercise its discretion to exclude the evidence under Rule 403 if it determines that the probative value is substantially outweighed by the danger of unfair prejudice. *Moses*, 105 S.W.3d at 626. When the trial court exercises its discretion not to exclude the evidence by finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, we give deference to this decision. *Id.* at 627. We cannot substitute our own decision for that of the trial court. *Id.* Therefore, in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, we cannot conduct a de novo review

and "should reverse the judgment of the trial court rarely and only after clear abuse of discretion." *Id.* (quotations omitted).

We note that pursuant to Rule 403, it is not mere prejudice that will render the evidence inadmissible, but rather the admission of the evidence must be *unfairly* prejudicial. *See* TEX. R. EVID. 403. Unfair prejudice "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). When conducting a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* at 641-42. It is the objecting party's burden to show that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.— Austin 1998, pet. ref'd).

Williams's complaint pertains to the trial court's admission of Mobley's testimony showing that Williams was the driver of a vehicle involved in a drive-by shooting four days before Whitley was shot. Williams contends the trial court abused its discretion because, under the Rule 403 balancing test, the danger of unfair prejudice substantially outweighed the probative value of the evidence. Specifically, he argues that (1) the degree of relevance was lacking, (2) the jury was misled into losing sight of the issue they were called upon to decide, (3) presenting the evidence took an excessive amount of time, and (4) the prosecution did not need the testimony. We disagree.

We find that the trial court did not err in finding the evidence probative. Williams's entire defense rested on evidence showing that (1) he never left his house on the day and evening of the shooting and (2) he was recuperating from a gunshot wound, which made it difficult for him to move around, and required dressing changes and tending to a colostomy bag. His defense was that he could not be the person who shot Whitley because he was at home during the time of the shooting, and he was recuperating from an injury. Thus, he argued he had no opportunity to shoot Whitley. Therefore, the testimony Williams complains about (Mobley's testimony that four days before Whitley was shot, she witnessed Williams driving a car that was involved in a drive-by shooting) was probative to show opportunity and identity, and to rebut Williams's defensive theory.

Further, we find there was nothing confusing or misleading about the evidence that would cause the jury to lose sight of the issue before them, and the evidence did not take an excessive amount of time.[1] Nor was the evidence cumulative of other evidence. Moreover, the trial court's limiting instruction helped ensure the jury would not be confused by the extraneous offense evidence or use it for an improper purpose. *See Burton v. State*, 230 S.W.3d 846, 851 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Accordingly, we hold the trial court did not abuse its discretion in admitting the extraneous offense evidence and affirm the judgment of the trial court.

Karen Angelini, Justice

DO NOT PUBLISH

---

[1] Although Williams argues that one entire volume of testimony related to the extraneous offense evidence, Mobley's testimony only amounted to a portion of the volume.